**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

Devin Meyers,

Plaintiff,

v.                                                          1:26-CV-387
                                                           (BKS/MJK)

Christian Hughes *et. al.*,

Defendant.

---

Devin Meyers, *Pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Brenda K. Sannes, Chief U.S. District Judge:

**ORDER & REPORT-RECOMMENDATION**

Meyers began this action on March 11, 2026, by filing a Complaint, and moving for leave to proceed *in forma pauperis* ("*IFP*") (Dkts. 1, 2). The Clerk sent Meyers's Complaint and *IFP* application to this Court for review. (Dkts. 1, 2).

## I.    BACKGROUND

On May 3, 2019, Meyers "contacted the police about an issue" he "had with some" of his former coworkers. (Complaint Facts, Dkt. 1-1, at pg. 1). Meyers, while on the phone, told the dispatcher that he felt threatened by his former coworkers and that "the place of business acted

1

generally unlawfully." (*Id.*). At some point, the dispatcher transferred Meyers to Defendant Deputy Christian Hughes of the Jefferson County Sheriff's Office. (*Id.*). During this call, Hughes asked Meyers "if he could come to" his "place of residence and speak to" Meyers "about the issue." (*Id.*). Meyers agreed. (*Id.*). But at no time during the call did Meyers make a "suicidal remark." (*Id.*). He neither expressed suicidal ideation nor reported any mental disorder. (*Id.*).

Once he arrived at Meyers's home, Hughes began "look[ing] through [Meyers's] personal belongings without any kind of reasonable suspicion or permission." (*Id.*). Hughes then handcuffed Meyers and told him that he was taking him to a mental health facility. (*Id.*). Meyers repeatedly rebuffed Hughes. (*Id.*). But he still took Meyers to a mental health facility. *See* (*id.*). Once the two arrived at the hospital, Meyers asked the hospital intake staff if he could leave, and the staff responded no because "a police officer brought [him] there." (*Id.*).

Meyers was committed at the mental health facility for three days. (*Id.*). During his involuntary commitment, hospital staff "forced" Meyers "to be on medication, and" he was "pressured to say that" he "was feeling suicidal at the time of the arrest." (*Id.*). Meyers "did

2

whatever [hospital staff] asked" him to do because "he wanted to leave as soon as possible." (*Id.*).

At some point, Hughes "falsified [a] police report." (*Id.*). Because Hughes arrested him, Meyers has "had a lot of issues with background checks for employment and purchasing insurance." (*Id.* at pg. 2). Meyers has also "been disqualified for a specific job because [he] ha[s] a history of hospitalization for mental health." (*Id.*).

Now, Meyers is suing Hughes and the Jefferson County Sherrif's Office, under 42 U.S.C. § 1983, alleging a false arrest, violating the Fourth Amendment, a federal criminal law claim, defamation, and Freedom of Information Law (FOIL) claim. (*Id.*).

## II.    *IFP* APPLICATION

Meyers declares in his *IFP* applications that he is unable to pay the filing fee. (Dkt. 2). And after reviewing his application, this Court finds that Meyers is financially eligible for *IFP* status.

## III.    STANDARD OF REVIEW

In addition to determining whether a plaintiff meets the financial criteria to proceed *IFP*, courts must also review the sufficiency of the allegations in the complaint under 28 U.S.C. § 1915. That statute requires a court to dismiss a case—at any time—if it determines that

the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

To be sure, courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before adverse parties have been served and had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts *still* have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

4

## IV.   DISCUSSION

After examining the Complaint, this Court recommends the District Court dismiss certain claims and allow other claims to proceed. *First*, the Court recommends the District Court allow Meyers's false arrest claim to proceed. *Second*, the Court recommends the District Court dismiss Meyers's defamation claim without prejudice and with leave to amend. *Third*, the Court recommends the District Court dismiss Meyers's federal criminal law claim without prejudice and without leave to amend. *Fourth*, and finally, the Court recommends the District Court dismiss Meyers's FOIL claim without prejudice and without leave to amend.

### A. Meyers plausibly alleges that Hughes apprehended and involuntarily committed him without probable cause.

The District Court should allow Meyers's false arrest claim to proceed. To state a false arrest claim, plaintiffs must plausibly allege that the defendant intended to confine the plaintiff, the plaintiff was conscious of the confinement, the plaintiff did not consent to the confinement, and the confinement was not otherwise privileged. Here, Meyers alleges that Hughes went to his house, and without reason, handcuffed Meyers and involuntarily committed him to a mental health

facility. As a result, the Court recommends the District Court allow Meyers's false arrest claim to proceed.

"A § 1983 claim for false arrest derives from the Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 294 (S.D.N.Y. 2015) (cleaned up). When "analyzing § 1983 claims for unconstitutional false arrest, courts" look "to the law of the state in which the arrest occurred." *Id.* (cleaned up). "In New York, to prevail on a false arrest claim, a plaintiff must show that: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). "False arrest claim[s] may be based on . . . an arrest for an emergency psychiatric evaluation." *Id.* (cleaned up).

Examining elements one and four, Hughes intended to confine Meyers and the confinement was not privileged. "For a mental health arrest, police officers must have reasonable grounds for believing that the person seized is dangerous to herself or others." *Guan*, 34 F.4th at

6

805. (cleaned up). Here, Hughes "looked through" Meyers's "belongings without any kind of reasonable suspicion or permission. Hughes then handcuffed Meyers, told him that he was going take Meyers to a mental health facility, and Meyers begged Hughes not to have him committed. (Complaint Facts, Dkt. 1-1, at pg. 1). Hughes, ignoring those pleas, took Meyers to the hospital even though Meyers never report suicidal ideation or any mental disorder. (*Id.*). Read liberally, Hughes intended to confine Meyers even though there was no reason to involuntarily commit him. As a result, the Court finds that Meyers plausibly alleges elements one and four.

Examining element two, Meyers was aware of the confinement. Meyers, in his Complaint, details his stay at the hospital. "While at the hospital" Meyers "was forced to be on medication, and pressured to stay that" he "was feeling suicidal at the time of arrest." (Complaint Facts, Dkt. 1-1, at pg. 1). Meyers "did whatever [hospital staff] asked [because he] wanted to leave as soon as possible." (*Id.*). Given his awareness, Meyers has plausibly alleged element two.

Element three is easily established. Meyers, throughout the Complaint, notes that he did not want to be committed. *See, e.g., (id.)* ("I

asked multiple times if I could leave. They stated that since a police officer brought me there, I had to stay); (*id.*) ("contrary to what is stated on the police report I asked him multiple times not to" take "me to the mental hospital."); *cf.* (*id.*) ("Hughes falsified the police report, and made an intentional false arrest."). Thus, the Court finds that Meyers has plausibly alleged element three. *See, e.g., Mooney v. Cnty. of Monroe*, 508 F. Supp. 2d 222, 224–25 (W.D.N.Y. 2007) (finding that the plaintiff plausibly alleged a false imprisonment claim where the "plaintiff's complaint alleges that [defendant] caused him to be confined at the hospital on November 23, 2005 and for several days thereafter, against his will and in contravention of his repeated demands for release.").

In sum, Meyers plausibly alleges a false arrest claim under §1915's forgiving standard of review. In his Complaint, Meyers needed to plausibly allege that Hughes intended to confine him, Meyers was aware of the confinement, Meyers did not consent to the confinement, and the confinement was not privileged. The Complaint plausibly alleges those elements.  So, this Court recommends the District Court allow Meyers's false arrest claim to *survive* initial review.

### B. Meyers has not plausibly alleged that the defamatory words were either published or injured him.

The Court recommends the District Court dismiss Meyers's defamation claim. To state a claim for defamation, plaintiffs must plausibly allege, among other things, that the defamatory words were published and injured the plaintiff. But here, Meyers never alleges that false police report was published. Yet he does allege that the unlawful arrest—not the false police report—injured him. In other words, Meyers has not stated a defamation claim. And because he has not, the Court recommends the District Court dismiss Meyers's defamation claim *without prejudice* and *with leave to amend.*

"Under New York law, spoken defamatory words are slander; written defamatory words are libel." *Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 487 (E.D.N.Y. 2016) (internal citations omitted). "New York requires a libel plaintiff to prove five elements: (1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff." *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001).

9

Meyers has not plausibly alleged a defamation claim. In his Complaint, Meyers writes that "Hughes stated [in] his police report that he was called to [the Meyers] residence regarding a mental disorder" but "no kind of mental disorder was reported on the calls to the police." (Complaint Facts, Dkt. 1-1, at pg. 1) (cleaned up). Yet "Hughes falsified the police report" noting that Meyers "made a suicidal remark" even though Meyers "did not." (*Id.*). Examining the allegations, the District Court can find that Meyers plausibly alleges elements 1, 3, and 4, by contending that Hughes falsified a police report to support his arrest of Meyers, a private party.

But there are two issues with Meyers's defamation claim. The first issue is publication. Meyers does not allege that anyone saw the false police report. *See generally* (*id.*). And because there is no allegation that anyone read the false police report, there is no publication, and therefore no defamation. But even if the Court were to construe the Complaint to allege publication, there is no defamation because of the second issue. The second issue with the allegation is injury. "Because" of "*the arrest*" Meyers has "had a lot of issues with background checks for both employment and purchasing insurance." (*Id* at pg. 2)

10

(emphasis). Meyers has also "been disqualified for [a] specific job because" he has "a history of hospitalization for mental health." (*Id.*). He has "even been disqualified from jobs because of [the] false mental health arrest." (*Id.*). Put differently, the *arrest* caused the injury, not the false police report. In fact, nothing in the Complaint can be construed as alleging that employers (or a specific employer) read the false police report. In short, Meyers's Complaint does not plausibly allege the publication or injury elements of defamation.

Meyers' defamation claim may be time barred. "The statute of limitations for defamation in New York is one year." *Lehman v. Discovery Commc'ns, Inc.*, 332 F. Supp. 2d 534, 537 (E.D.N.Y. 2004) citing N.Y. C.P.L.R. §215(3). Libel claims "accrue at the time of the first publication, which is defined as the earliest date on which the work was placed on sale or became generally available to the public." *Id.* (cleaned up). Here, assuming the false police report was published, it most likely would have been contemporaneous with the arrest, which occurred on May 3, 2019. (Complaint Facts, Dkt. 1-1, at pg. 1). But Meyers filed this Complaint on March 11, 2026—far later than one year after the

11

document was created. As a result, Meyers's defamation claim may be time barred.

## C. Meyers cannot bring a claim under the federal criminal law.

The District Court should dismiss Meyers's federal criminal law claim. Private citizens "cannot prosecute a criminal action in federal court. *Uppal v. Bank of Am.*, No. 18-CV-3085, 2018 WL 10323032, at *2 (S.D.N.Y. Oct. 4, 2018) (citing) *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Here, Meyers brings a claim under 18 U.S.C. § 242—a criminal statute. Yet he cannot do so. *See Hernandez v. Hernandez*, No. 24-CV-8614, 2026 WL 318291, at *5 (E.D.N.Y. Feb. 5, 2026) (dismissing the plaintiff's claim under 18 U.S.C. 242, a criminal statute, because private plaintiffs "lack standing to cause the criminal prosecution of other" because "such [a] right is reserved to the state.") (cleaned up). In consequence, this Court recommends the District "Court dismiss[] [Meyers's] claims for alleged violations of federal criminal statutes for failure to state a claim on which relief may be granted." *Blacknall, v. Rockland County Municipal Corporation, et al.*, No. 25-CV-7747, 2026 WL 660701, at *2 (S.D.N.Y.

Mar. 5, 2026) (dismissing the plaintiff's claim brought under, among other statutes, 18 U.S.C. §242).

### D. Meyers's FOIL claim must be dismissed because the District Courts lacks jurisdiction to hear it.

The Court recommends the District Court deny Meyers's FOIL claim. "FOIL allows individuals to request disclosure of records collected by New York state agencies, subject to certain statutory exemptions." *Jarvis v. Duell*, No. 5:25-CV-843 (LEK/MJK), 2025 WL 3963319, at *3 (N.D.N.Y. Oct. 16, 2025) (cleaned up). If an initial request is denied, the requester may appeal the denial first to the "head, chief executive or governing body" of the entity or agency in possession of the documents. N.Y. Pub. Off. L. § 89(4)(a). If the requester is again denied, they may appeal that denial by commencing a special proceeding in New York State courts under Article 78 of the New York Civil Practice Law and Rules. N.Y. Pub. Off. L. § 89(4)(b). Here, Meyers alleges that the Jefferson County Sheriff's Office violated FOIL. (Complaint Facts, Dkt. 1-1, at pg. 2). But the District Court does not have jurisdiction to hear that claim. *See In re Shelton*, No. 06-CV-6132, 2006 WL 3463425, at *2 (E.D.N.Y. Nov. 30, 2006) ("To the extent that [the plaintiff] seeks information from state agencies . . ., this Court

13

does not have jurisdiction over requests made pursuant to the state FOIL.").  The Court, therefore, recommends dismissing any claims arising out of Meyers's FOIL claim.

### E. Meyers should be allowed to amend his Complaint.

Meyers should be allowed to amend his Complaint. Generally, before courts dismiss a *pro se* complaint or any part of a Complaint *sua sponte*, they should afford the plaintiff the opportunity to amend at least once. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). But leave to re-plead may be denied where any amendment would be futile. *See id.* Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, the Court recommends dismissing Meyers's federal criminal law, and FOIL claims *without prejudice* and *without leave to amend* because any amendment would be futile. But the Court also recommends allowing Meyers to amend his Complaint as to the defamation claim. Meyers may be able to plead facts to prove defamation and prove that the claim is not time barred.

## IV. CONCLUSION

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that Meyers's motion to proceed *IFP* (Dkt. 2) is **GRANTED**; and it is further

**RECOMMENDED,** that Meyers's false arrest claim be allowed to **PROCEED**; and it is further

**RECOMMENDED,** that Meyers's defamation claim be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Meyers's federal criminal law claim be **DISMISSED WITHOUT PREJUDICE** and **WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Meyers's FOIL claim be **DISMISSED WITHOUT PREJUDICE** and **WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that if the District Court adopts this recommendation, Meyers be given thirty (30) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH**

15

**WILL SUPERSEDE THE ORIGINAL**, and that Meyers must include all remaining facts and causes of action in the amended complaint.  No facts or claims from the original complaint may be incorporated by reference, and it is

ORDERED, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on the *pro se* Plaintiff.

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 19, 2026

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

16

2026 WL 660701
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dainell K.-Shawn BLACKNALL, Plaintiff,
v.
ROCKLAND COUNTY MUNICIPAL CORPORATION, et al., Defendants.

25-CV-7747 (LLS)
|
Signed March 5, 2026

**Attorneys and Law Firms**

Dainell K.-Shawn Blacknall, New City, NY, Pro Se.

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

**\*1**  Plaintiff is currently detained at Rockland County Jail and is proceeding *pro se*. He brings this action, under 42 U.S.C. § 1983, alleging violations of his rights under the First, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, and Fourteenth Amendments to the United States Constitution. Plaintiff also invokes federal criminal statutes 18 U.S.C. §§ 241, 242, 245, 1503, and 2340, as well as 42 U.S.C. § 2000, and state law claims for intentional and negligent infliction of emotional distress. By separate order, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

**BACKGROUND**

The following allegations are drawn from the complaint.[1] Plaintiff does not specify when or where his claims arose. Plaintiff makes the following statement of facts, without any further information:

What Happened? Names? Detail. 1st amendement - Deprivation right to redress grievances with my Groverment. 4th amendment - right against unreasonable seizure. 5th amendment - right to remain

sileat. 6th amendment - Right to face your accuser Proof of injury 7th amendment. Right to Jury trail for controvisy over $20 and excessive fines 14th amendment - Due Proccess of law & Equal Protection of law.

(ECF 1 at 6.)

Plaintiff brings suit against Rockland County, Sheriff Louis Falco, Court Officer Kelvin Sloven, John Doe Officer from the Haverstraw Police Department, and John Doe Officer from the Clarkstown Police Department. Plaintiff seeks compensatory and punitive damages.

## DISCUSSION

### A. Short and plain statement of claim

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555). The Court need not accept, however, "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

**\*2**  Plaintiff does not provide enough information to determine whether the allegations plausibly suggest that Plaintiff is entitled to relief from the defendants. Specifically, the complaint does not plead facts describing what occurred and what each of the named defendants did or failed to do that violated his rights. For example, Plaintiff asserts a violation of his Fourth Amendment right to be free from unreasonable seizure, but he does not allege when and where he was seized, who did so, and the context suggesting that the seizure was unreasonable. Without concrete facts describing what occurred and when it occurred, Defendants cannot respond to the complaint. Plaintiff's complaint therefore does not comply with Rule 8 and fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Prosecuting criminal charges

Plaintiff invokes federal criminal statutes 18 U.S.C. §§ 241, 242, 245, 1503, and 2340, as a basis for his suit against Defendants. Plaintiff cannot initiate the arrest and prosecution of an individual in federal court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct prosecuting attorneys to initiate a criminal proceeding against any Defendant, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses Plaintiff's claims for alleged violations of federal criminal statutes for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff may be able to allege additional facts to state a valid claim, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

First, Plaintiff must name as the defendants in the caption and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. Second, in the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. Any defendants named in the caption should be discussed in Plaintiff's statement of claim. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include:

a) the names and titles of all relevant people;

**b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;**

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## LEGAL ASSISTANCE

Plaintiff is advised that a clinic operated by the City Bar Justice Center (CBJC) may be able to assist him in responding to this court order. Appointments can be scheduled by phone (212-382-4794), email (fedprosdny@nycbar.org), or by completing the intake form. A flyer with details is attached. [2]

## CONCLUSION

**\*3** Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 25-CV-7747 (LLS). An Amended Complaint form and a flyer from CBJC is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, Plaintiff's federal claims will be dismissed for failure to state a claim upon which relief may be granted, and the Court will decline supplemental jurisdiction of his state law claims.

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

**AMENDED**

**COMPLAINT**

(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I.  LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.  PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____
First Name               Middle Initial          Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____
Current Place of Detention

_____
Institutional Address

_____
County, City                          State                  Zip Code

## III.  PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

Page 2

Blacknall v. Rockland County Municipal Corporation, Slip Copy (2026)

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 2:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 3:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 4:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Page 3

## V.    STATEMENT OF CLAIM

Place(s) of occurrence:    _____

Date(s) of occurrence:    _____

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 4

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

Page 5

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

**All Citations**

Slip Copy, 2026 WL 660701

### Footnotes

1 The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

2 The CBJC is a private organization that it not part of the court, and the CBJC's SDNY Federal Pro Se Legal Assistance Project cannot accept filings on behalf of the court.

**End of Document**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 318291
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Veronica HERNANDEZ, Plaintiff,

v.

Anthony HERNANDEZ, P.O. E. Amaya, Sgt. Racioppo, Sgt. McHugh, Fame Caucasian Officer Doe, Rodney K. Harrison, Suffolk County Police Department, Long Island Community Hospital, Dr. Doni Marie Rivas D.O., Female Asian Nurse Doe, Female Caucasian LICH Employee Doe, Female Caucasian LICH Security Doe, Male African American Security Doe, Male African American LICH Orderly, Ellen Mullally, Richard T. Margulis, Debra Grimm, LICH Clinical Leadership, LICH Section 1557 Coordinator, NYU Langone Health System & Hospitals, Defendants.

2:24-cv-8614 (NJC) (ST)
|
Signed February 5, 2026

**Attorneys and Law Firms**

Veronica Hernandez, Patchogue, NY, Pro Se.

Anne C. Leahey, Suffolk County Department of Law, Hauppauge, NY, for Defendants P.O. E. Amaya, SGT. Racioppo, SGT. McHugh, Rodney K. Harrison, Suffolk County Police Department.

Robert J. Cecala, Aaronson Rappaport Feinstein & Deutsch, New York, NY, for Defendants Long Island Community Hospital, Dr. Doni Marie Rivas D.O., Female Asian Nurse Doe, Female Caucasian LICH Employee Doe, Female Caucasian LICJH Security Doe, Male African American Security Doe, Male African American LICH Orderly, Ellen Mullally, Richard T. Margulis, Debra Grimm, LICH Clinical Leadership, LICH Section 1557 Coordinator, NYU Langone Halth System & Hospitals.

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

**\*1** On December 17, 2024, Plaintiff Veronica Hernandez, commenced this action against her husband, Anthony Hernandez, members of the Suffolk County Police Department (the "Suffolk County Defendants"), and employees of Long Island Community Hospital (the "NYU Defendants," and together "Defendants"). (Compl., ECF No. 1.) The Complaint brings the following claims against Defendants: (1) a claim under 42 U.S.C. § 1983 for violating Ms. Hernandez's rights by failing to criminally investigate and charge Mr. Hernandez with a crime; (2) claims for disability discrimination and retaliation under the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101, et seq. and the Rehabilitation Act, 29 U.S.C. § 701 et seq.; and (3) state law claims for defamation, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). (Compl. at 11–27.)

The Suffolk County Defendants moved to dismiss this action on July 7, 2025 (ECF No. 15), and the NYU Defendants moved to dismiss the action on September 9, 2025 (ECF No. 23). This Court referred both motions to Magistrate Judge Steven Tiscione on August 15, 2025 and November 13, 2025 respectively. (Elec. Orders, Aug. 15, 2025, Nov. 13, 2025.)

On January 13, 2026, Judge Tiscione issued a Report and Recommendation (the "R&R") recommending that both the Suffolk County Defendants' Motion to Dismiss (ECF No. 15) and the NYU Defendants' Motion to Dismiss (ECF No. 23) be granted. (R&R at 20.) The R&R additionally recommends that the Court deny Ms. Hernandez leave to replead or file an amended complaint, on the ground that any such opportunity to amend would be futile. (*Id.* at 20.)

A copy of the R&R was provided to counsel for the Suffolk County Defendants and to counsel for the NYU Defendants via ECF on January 13, 2026. (*See id.*.) Counsel for the Suffolk County Defendants filed a certificate of service on January 14, 2026, and counsel for the NYU Defendants filed an affidavit of service on January 15, 2026. (ECF Nos. 30, 31.) Both affirm that counsel served the R&R on Ms. Hernandez by Certified Mail at Ms. Hernandez's last known address on the dates the certificates of service were filed. (*See id.*). The R&R instructed that any objections to the R&R were required to be submitted in writing to the Clerk of Court within fourteen (14) days of service of the R&R. (R&R at 20.) Accordingly, Ms. Hernandez was required to file any objections to the R&R by February 2, 2026. *See* Fed. R. Civ. P. 72(b)(2) (requiring a party to file objections to a magistrate judge's report and recommendation within 14 days of service); Fed. R. Civ. P. 5(b)(2)(C) (providing that service by mail "is complete upon mailing"); Fed. R. Civ. P. 6(d) (adding three days for a party to act in response to a document served by mail); Fed. R. Civ. P. 6(a)(1)(C) (deferring deadlines that fall on a Saturday or Sunday until "the next day that is not a Saturday, Sunday, or legal holiday"); *see also Murphy v. Murphy*, No. 20-cv-02388, 2023 WL 2795977, at *1 (E.D.N.Y. Apr. 5, 2023) (setting out these same rules for calculating the deadline to object to an R&R).

**\*2** In reviewing a report and recommendation, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no objections are filed, a district court reviews a report and recommendation for clear error. *King v. Paradise Auto Sales I, Inc.*, No. 15-cv-1188, 2016 WL 4595991, at *1 (E.D.N.Y. Sept. 2, 2016) (citation omitted); *Covey v. Simonton,* 481 F. Supp. 2d 224, 226 (E.D.N.Y. 2007).

Because no party has timely filed objections to the R&R, I may review the R&R for clear error. *King*, 2016 WL 4595991, at *1. Nevertheless, I reviewed the R&R de novo out of an abundance of caution. Having reviewed the motion papers, the applicable law, and the R&R, I adopt the R&R's thorough and well-reasoned recommendation that the motions to dismiss filed by the Suffolk County Defendants and the NYU Defendants be granted, and its recommendation that Ms. Hernandez be denied leave to amend her claims against the Suffolk County Defendants and the NYU Defendants.

Accordingly, the Suffolk County Defendants' Motion to Dismiss (ECF No. 15) and the NYU Defendants' Motion to Dismiss (ECF No. 23) are both granted. The Suffolk County Defendants and the NYU Defendants are therefore terminated from this action.

The Clerk of the Court is respectfully directed to mail a copy of this Order to Plaintiff at her address of record and to record such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

## REPORT AND RECOMMENDATION

TISCIONE, United States Magistrate Judge:

On December 17, 2024, Veronica Hernandez ("Plaintiff") sued members of the Suffolk County Police Department ("Suffolk County Defendants"), Long Island Community Hospital ("NYU Defendants"), and Anthony Hernandez alleging defamation, negligent and intentional infliction of emotional distress, violation of the Americans with Disabilities Act ("ADA"), and violation of 42 U.S.C. § 1983. The Suffolk County and NYU Defendants move to dismiss. The motions should be GRANTED.

**BACKGROUND** [1]

### I. Parties

Veronica Hernandez ("Plaintiff") is a self-represented New York resident.

Defendants can be broken into three categories.

First is Anthony Hernandez, a self-represented New York resident who is married to Plaintiff. Anthony Hernandez has been inactive in the case thus far.

**\*3** Second are the Suffolk County Defendants. The Suffolk County Defendants are the Suffolk County Police Department ("SCPD"), SCPD Commissioner Rodney Harrison, Officer Amaya, Sergeant McHugh, and Sergeant Racioppo.

The third category are the NYU Defendants. The NYU Defendants are the Long Island Community Hospital ("LICH"), Dr. Doni Marie Rivas, Female Asian nurse Doe, Female Caucasian LICH Employee Doe, Female Caucasian LICH Security Doe, Male African American Security Doe, Male African American LICH Orderly, Ellen Mullally, Richard T. Margulis, Debra Grimm, LICH Clinical Leadership LICH Section 1557 Coordinator, and NYU Langone Health System & Hospitals.

### II. Statement of Facts and Procedural History

On October 29, 2022, Plaintiff called SCPD alleging her husband, Anthony Hernandez, had been poisoning her with Rid-X, a product used to clean septic tanks. Compl. ¶¶ 1-4, ECF No. 1. [2] The basis of the allegation is that she was suffering from throat irritation and other symptoms for over a year. *Id.* ¶ 10. Plaintiff claims she was experiencing "nose bleeds, earaches, thrush, [her] finger nails were dark and brittle, [her] breath was rancid, [and she had] scarring on [her] palate and throat." *Id.* ¶ 19.

Officer Amaya responded to the call and Plaintiff was transported to LICH for evaluation. *Id.* ¶ 1. When Plaintiff was on route to the hospital, Anthony Hernandez allegedly informed Officer Amaya that Plaintiff was mentally ill, an allegation Plaintiff denies. *Id.* ¶¶ 11-12. Later in the complaint, however, Plaintiff states she was diagnosed with an "emotional disorder." *Id.* ¶ 97.

Allegedly, Anthony Hernandez told Officer Amaya that Plaintiff's symptoms were a result of her engaging "in rampant, unspeakably promiscuous behavior with random men, thereby making [her] mouth and throat accessible and susceptible to severe and chronic bacterial infection." *Id.* ¶ 14. Plaintiff claims that "though Officer Amaya was not an active participant in the events that unfolded while I was in the care of Long Island Community Hospital," he conveyed "false, defamatory information obtained from Anthony ... to the ER staff [which] was the basis for their mistaken beliefs, deprivation of services and all other constitutional violations." *Id.* at pg. 7.

Plaintiff alleges Officer Amaya relayed the information without "fact checking." *Id.* ¶ 4. The allegedly false information provided by Anthony Hernandez is the lynchpin and entire basis of Plaintiff's complaint. Plaintiff claims SCPD and LICH were dismissive of her claims, treating her as if she suffered from mental illness as opposed to using "domestic violence protocol." *Id.* ¶ 9.

Even still, LICH assessed plaintiff, ran lab tests, and found no support for chemical ingestion or domestic abuse. *Id.* ¶¶ 11-13. Plaintiff alleges LICH failed to rule out "alternate causation" for her throat irritation. *Id.* ¶ 18. Plaintiff claims that upon discharge, three unknown LICH employees menaced her and attacked her. *Id.* ¶¶ 27-30. There are no details provided of the alleged altercation.

**\*4** Subsequently, Officer Amaya informed Plaintiff there was insufficient proof to pursue formal criminal charges against Anthony Hernandez. *Id.* ¶ 26. Nevertheless, on November 11, 2022, Plaintiff visited the Fifth Precinct of the SCPD to file a

criminal complaint. *Id* ¶¶ 32-33. Sergeant McHugh informed Plaintiff SCPD would not pursue criminal charges because no crime had been committed. *Id.* ¶ 49. Plaintiff requested to speak with a higher-ranking officer. *Id.* Sergeant Racioppo then spoke with Plaintiff, received her written complaint, and walked away. *Id.* ¶ 44. Plaintiff alleges another unidentified female police officer, who Plaintiff believes handles domestic violence cases, then walked by her and ignored her. *Id.* ¶ 48. Plaintiff left a second copy of her complaint with Sergeant McHugh before leaving the station. *Id.* ¶ 51. Finally, Plaintiff mailed a copy of her criminal complaint to SCPD and SCPD Commissioner Rodney Harrison. *Id.* ¶ 51-53.

Later that day, Plaintiff called SCPD to report that Anthony Hernandez was inebriated and confronted her. *Id.* ¶ 55. Officer Amaya was dispatched to the scene. *Id.* ¶ 57. Plaintiff alleges SCPD intentionally delayed response time. *Id.* ¶¶ 55-58. Further, Plaintiff claims Officer Amaya was dispatched to purposefully intimidate her – the basis of the allegation is entirely unclear. *Id.* ¶ 62. Plaintiff believes this is evidence sufficient to confirm SCPD "had taken [a] position against" her. *Id.* ¶ 67.

Nearly two years later, in August 2024, Plaintiff called SCPD to report an unknown drunken male sitting in her neighbor's front yard. *Id.* ¶ 73. Plaintiff alleges the responding officers did not acknowledge her, and instead spoke with the unknown male, determined he was not a threat, and left the scene. *Id.* ¶¶ 78-79. The unknown male then left upon Plaintiff's request without conformation. *Id.* ¶¶ 81-85. Plaintiff was upset with the manner SCPD handled the situation, claiming she was discriminated against. *Id.* ¶¶ 84-91.

The sum of Plaintiff's allegations is that SCPD and LICH were dismissive of her domestic violence allegations. Plaintiff filed a complaint on December 17, 2024, alleging defamation, negligent and intentional infliction of emotional distress, discrimination under the ADA, and civil rights violations under 42 U.S.C. § 1983. Plaintiff also demands criminal charges against various Defendants. Plaintiff seeks $8 billion in damages, as well as punitive damages, and myriad injunctive relief.

On July 7, 2025, the Suffolk County Defendants moved to dismiss. *See* ECF No. 15. On September 9, 2025, the NYU Defendants moved to dismiss. *See* ECF No. 23. Judge Nusrat Choudhury refereed both motions to this Court for a report and recommendation.

## LEGAL STANDARD

To survive a 12(b)(6) motion, a complaint must contain sufficient facts such that "a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. In doing so, the court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Gamm*, 944 F.3d at 458. However, allegations that "are no more than conclusions are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010); *see Iqbal*, 556 U.S. at 663, 129 S.Ct. 1937 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Larsen v. Berlin Bd. of Educ.*, 588 F.Supp.3d 247, 256 (D. Conn. 2022) ("[A] court need not credit conclusory or contradictory allegations.").

**\*5** "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed R. Civ. P. 12(b)(1). In doing so, the Court constructs all ambiguities and draws all inferences in Plaintiff's favor. However, under 12(b)(1) challenge, the "plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence." *Moser*

*v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002). In making such a determination this Court is "free to consider materials extrinsic to the complaint." *Id.*

These mandates apply to represented parties and *pro se* litigants alike. Although courts construe *pro se* pleadings liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), a *pro se* complaint must still "state a claim that is plausible on its face." *Mancuso v. Hynes*, 379 Fed. Appx. 60, 61 (2d Cir. 2010); *see also Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint); *King v. New York*, 2023 WL 5625440, *3, 2023 U.S. Dist. LEXIS 154734, *7-8 (E.D.N.Y. Aug. 31, 2023) (noting that a *pro se* plaintiff is not exempt from compliance with procedural and substantive law). Plaintiff fails to meet her burden.

## DISCUSSION

### I. Criminal Statutes

As a preliminary matter, Plaintiff cites several criminal statutes in her complaint: 18 U.S.C. §§ 241, 242, 245, 18 U.S.C. § 1503, and 34 U.S.C. § 30501. A private plaintiff – of course – "lacks standing to cause the criminal prosecution of others," as such right is reserved to the state. *McCarthy v. Qatar Airways, Q.C.S.C.*, 2024 WL 1639596, at *3 (S.D.N.Y. Apr. 15, 2024). Nor can a plaintiff direct prosecutors to initiate a criminal action as such a decision is "immune from control or interference by citizen or court." *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). "[T]he decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981); *see Brown v. Alexander*, 2024 WL 5141852, at *2 (S.D.N.Y. Dec. 10, 2024) ("Plaintiff seems to seek the federal criminal prosecution of the defendants. If that is the case, the Court must dismiss those claims for such relief."). To the extent Plaintiff seeks relief under criminal statutes or otherwise requests this Court initiate criminal proceedings, those claims are dismissed.

### II. Statute of Limitations

Plaintiff brings two untimely intentional tort claims – IIED and defamation. The allegations stem from the October 29, 2022, incident. Plaintiff filed suit on December 17, 2024 – more than two years later. Defamation and IIED are subject to a one-year statute of limitations. CPLR 215(3); *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 536 (2d Cir. 2009); *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016). Accordingly, Plaintiff's IIED and defamation claims are time barred as to all Defendants.

### III. Suffolk County Defendants

The Court will now address defenses specific to the Suffolk County Defendants. The sum of Plaintiff's allegations is that Officer Amaya responded to her 911 call, relayed the information given by Anthony Hernandez to LICH, refused to open a criminal investigation into Anthony Hernandez, and failed to acknowledge her during a subsequent 911 call. Essentially, Plaintiff is displeased with SCPD's service. Such is not actionable.

   a. *Standing*

Suffolk County Defendants allege Plaintiff does not have Article III standing to sue SCPD or its officers. This Court agrees. Standing requires the Plaintiff to plead: (1) injury in fact; (2) traceable causation between Plaintiff's injury and Defendants' conduct; and (3) the Court's ability to redress the alleged injury. *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024). Importantly, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiff fails to do so.

 **\*6** An injury in fact must be "concrete and particularized ... not conjectural or hypothetical." *Id.* at 560, 112 S.Ct. 2130 (citations and internal quotation marks omitted). Plaintiff's injury, however, is entirely conjectural. The Second Circuit has made clear that refusal to investigate or charge an individual does not constitute injury. *Ostrowski v. Mehltretter*, 20 F. App'x 87, 90 (2d Cir. 2001). Indeed, "the duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level

of law enforcement discretion." *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010); *see also Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). Plaintiff's alleged mistreatment and SCPD's refusal to charge Anthony Hernandez does not constitute injury in fact – much less to the tune of $8 billion.

Moreover, putting aside the fact Plaintiff's defamation claim is time barred, the alleged reputational harm is too far attenuated. Plaintiff contends Officer Amaya damaged her reputation by repeating Anthony Hernandez's claim she was mentally ill to LICH. Plaintiff does not detail how this impacted her reputation. Where courts have recognized reputational injury to confer standing, the allegations were traceable to realized harm. *See, e.g., Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 139, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (NGO designated as "Communist" by Attorney General had standing because of "damage [to] the reputation"); *United States v. Accra Pac, Inc.*, 173 F.3d 630, 633 (7th Cir.1999) ("being put on a blacklist ... is treated as immediately redressible harm because it diminishes (or eliminates) the opportunity to practice one's profession even if the list ... does not impose legal obligations."); *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 162 (2d Cir. 2003) (bank manager suffered injury when regulatory board found she engaged in misconduct, releasing prohibition order against her, "a death knell for [Manager's] career in an industry dependent on security and reliability."). Plaintiff's complaint here falls short of tangible harm.

Accordingly, "[w]hile it is certainly possible that reputational injuries could be sufficiently redressable to satisfy this element of Article III standing ... the stain on [Plaintiff's] reputation is far too speculative to support constitutional standing." *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 113 (2d Cir. 2022).

Further, Plaintiff's request to terminate Officer Amaya fails as to redressability. "The taking of disciplinary action against government employees, including the invocation of the sanction of dismissal, is a matter of executive discretion, and is subject to judicial supervision only to the extent required to insure substantial compliance with the pertinent statutory procedures[.]" *McTiernan v. Gronouski*, 337 F.2d 31, 34 (2d Cir. 1964). Relevant here, "[t]he Civil Service Law and Unconsolidated Laws § 891 govern and establish comprehensive procedures for police discipline in New York State." *Rochester Police Locust Club, Inc. v. City of Rochester*, 71 Misc. 3d 438, 447, (N.Y. Sup. Ct. 2020). Thus, termination of Officer Amaya falls outside of this Court's purview.

Plaintiff does not establish Article III standing to sue SCPD. Proceeding with the utmost liberality considering Plaintiff's *pro se* status, this Court will address facial plausibility of the remaining claims.

   b. *42 U.S.C. § 1983*
42 U.S.C. § 1983 does not create a positive right but provides a vehicle to defend federal rights granted elsewhere and mend constitutional injuries. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). "To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citation and quotation marks omitted). Plaintiff's alleged constitutional violation is that SCPD failed to investigate and charge Anthony Hernandez and discriminated against her due to her disability. Neither allegation is actionable.

 **\*7** As stated *supra*, refusal to investigate or prosecute an alleged crime is not a constitutional injury. *See Harrington*, 607 F.3d 31; *Ostrowski*, 20 F. App'x at 90. Likewise, disability discrimination is not a constitutional injury. To be sure, "freedom from discrimination on the basis of disability is a right secured by statute ..., not by the Constitution." *Fierro v NY City Dept. of Educ.*, 994 F. Supp. 2d 581, 590 (SDNY 2014) (citations and quotation marks omitted); *see also Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 368, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.").

*i. Individual Capacity*

To the extent Plaintiff seeks to hold the Defendants liable in their individual capacities, there is insufficient personal involvement to sustain a facially plausible cause of action. "[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). When a plaintiff sues a government official in their individual capacity "personal involvement of [the] defendants [ ] alleged constitutional deprivations is a prerequisite ... under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). A defendant must be "sufficiently involved in the alleged denial" of constitutional rights. *Id.* Generally, a defendant must have "directly participated in the infraction." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). Here, however, Plaintiff fails to allege any SCPD parties were actively involved in her alleged constitutional injury.

For example, Plaintiff names Commissioner Harris even though he had zero involvement in Plaintiff's alleged injury. Thus, Plaintiff seeks to hold Commissioner Harris liable under a *respondeat superior* theory. However, "§ 1983 does not authorize respondeat-superior liability." *Alwan v. City of New York*, 311 F. Supp. 3d 570, 587 (E.D.N.Y. 2018). To be sure, "an allegation that defendant is in a high position of authority ... is, in and of itself, insufficient to impose liability absent proof of personal involvement in the constitutional deprivation." *Wallace v. Conroy*, 945 F. Supp. 628, 637–38 (S.D.N.Y. 1996). Further, Plaintiff alleges Officer Amaya did not adequately investigate her domestic violence complaints. As stated, such is not actionable. Moreover, Plaintiff readily admits "Officer Amaya was not an active participant in the events that unfolded[.]" Compl. at pg. 7. Plaintiff's § 1983 claims fail as a matter of law.

c. *Disability Discrimination*

Plaintiff brings disability discrimination claims against SCPD under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and the Rehabilitation Act, 29 U.S.C. § 701 et seq. Plaintiff claims she has a "condition called Mydriasis which causes [her] pupils to be fixed and dilated" and an unnamed "emotional disorder." Compl. ¶¶ 93, 97. Plaintiff contends SCPD discriminated against her based on her disabilities by denying "her services that would have been routinely provided absent my disability and/or perceived impairment disability." *Id.* ¶ 100. What services Plaintiff was denied is entirely unclear.

To state an ADA or Rehabilitation Act claim, Plaintiff must allege "(1) that [s]he is a 'qualified individual' with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir. 2003); *see also Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (holding ADA and Rehabilitation act elements are the same). Plaintiff fails on all three prongs.

**\*8** Plaintiff fails to state she is a qualified individual under the statute. "The ADA's definition of disability may be satisfied if a plaintiff demonstrates a record of an impairment that substantially limits one or more major life activities." *Levine v. Smithtown Cent. Sch. Dist.*, 565 F. Supp. 2d 407, 425 (E.D.N.Y. 2008) (internal quotation marks and citation omitted); *Kelly v NY State Off. of Mental Health*, 200 F Supp 3d 378, 394 (EDNY 2016) ("To show a record of impairment, a plaintiff must establish that she has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment."). Here, Plaintiff merely claims she has a condition causing her pupils to dilate and an emotional disorder. Plaintiff does not suggest how her life is limited or impaired in any way. Accordingly, such "failure to plausibly allege a substantial limitation to a major life ... precludes her from asserting that she has a record of disability." *Id.*

Next, Plaintiff fails to allege how SCPD discriminated against her. A plaintiff may bring an ADA claim alleging disparate treatment, disparate impact, or failure to provide a reasonable accommodation. *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021). Plaintiff claims SCPD mistook her Mydriasis with a mental illness and disregarded her allegations. Compl. ¶ 96.

This Court is left wondering how SCPD could have treated Plaintiff any differently. SCPD responded to Plaintiff's 911 call, communicated with Plaintiff, reviewed her criminal allegations, and informed her there was insufficient evidence to charge Anthony Hernandez. Indeed, SCPD relied on LICH's lab results that no evidence of chemical ingestion was present. *Id.* ¶ 11. The only alternative would be for SCPD to formally charge Anthony Hernandez and as belabored at this point, Plaintiff is not entitled to direct such prosecution. Moreover, mere conclusory statements regarding disparate treatment cannot sustain an ADA or Rehabilitation Act claim. To be sure, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

Further, Plaintiff fails to allege SCPD did not offer a reasonable accommodation. Indeed, it appears that Plaintiff was able to contact and communicate with SCPD throughout this saga. The record does not demonstrate Plaintiff was "denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of the plaintiff's disability." *Askins v. City of New York: Police Dep't*, No. 1:22-CV-9277 (LTS), 2022 WL 17539171, at *5 (S.D.N.Y. Dec. 5, 2022).[3] At bottom, Plaintiff's discrimination claims fail.

### d. *Tort Claims*

Although Plaintiff's intentional tort claims are time barred, she also failed to satisfy mandatory notice requirements. County Law § 52 (1) provides that every tort claim against a county must be "served in compliance with section fifty-e of the general municipal law." Pursuant to General Municipal Law § 50-e (1)(a), the notice of claim must be served "within ninety days after the claim arises" as "a condition precedent to the commencement of an action or special proceeding against a public corporation, ... or any officer, appointee or employee thereof."

"Notice of claim requirements are construed strictly by New York state courts." *Hardy v NY City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citation and quotation marks omitted). New York law mandates the complaint plead "(1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Hardy v NY City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir 1999). "Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Id.* at 794. No such notice of claim was satisfied, let alone plead, here. Such is fatal.

**\*9**  Even assuming *arguendo* Plaintiff did satisfy the notice requirements, the IIED and NIED allegations fail as a matter of law. To reiterate, Plaintiff alleges SCPD was dismissive to her and did not investigate Anthony Hernandez to the extent she desired.

IIED requires the Plaintiff to plead " '(1) extreme and outrageous conduct' with the '(2) intent to cause severe emotional distress,' that there was '(3) a causal connection between the conduct and the injury,' and that '(4) severe emotional distress' resulted." *Rentas v. Ruffin*, 816 F.3d 214, 227 (2d Cir. 2016) (citing *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir.1996)). However, liability attaches only where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society]." *Id.* at 790–91 (alteration in original). Being dismissive or otherwise rude to Plaintiff falls well short of this high bar.

Further, " 'public policy bars claims for intentional infliction of emotional distress against a governmental entity.' " *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 314 (E.D.N.Y. 2016) (citing *Burbar v. Incorporated Village of Garden City*, 961 F.Supp.2d 462, 474 (E.D.N.Y.2013)); *accord Frederique v. County of Nassau*, 168 F.Supp.3d 455, 2016 WL 1057008, *17 (E.D.N.Y. Mar. 11, 2016); *Shahzad v. County of Nassau*, 2013 WL 6061650, *8 (E.D.N.Y. Nov. 14, 2013).

As to NIED, a plaintiff must plead "(1) breach of a duty owed to plaintiff, which breach either unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Shearon v. Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 156 (E.D.N.Y. 2013). However, "a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."

*Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994); accord *Fiedler v. Incandela,* 222 F. Supp. 3d 141, 167 (E.D.N.Y. 2016). Accordingly, Plaintiff's NIED claim fails.

In sum, Plaintiff's claims against the Suffolk County Defendants fail on numerous grounds. Accordingly, the Suffolk County Defendants' motion to dismiss should be granted in its entirety.

### IV. NYU Hospital Defendants

This Court will now turn to defenses specific to the NYU Defendants.

#### a. *Service of Process*

NYU Defendants allege Plaintiff failed to effectuate adequate service of process. This Court agrees. To reiterate, NYU Defendants are a combination of natural persons and corporate entities. Plaintiff served all NYU Defendants via certified mail. *See* Proof of Delivery, ECF No. 11. However, "[n]either the Federal Rules nor New York's CPLR permit service of a summons and complaint by simply mailing a copy to a defendant via the U.S. Postal Service or an express delivery service." *Fairman v. Hurley,* 373 F. Supp. 2d 227, 232 (W.D.N.Y. 2005).

Service of process must be effectuated in the manner proscribed by Rule 4(e): (1) serving a copy of the summons and complaint to the defendant personally; (2) leaving a copy of the summons and complaint at the defendant's usually place of abode with an individual of suitable age and discretion; or (3) delivering a copy of the summons and complaint to an authorized agent or recipient. Fed. R. Civ. P. 4.

**\*10** Service of process may also be effectuated through pertinent state law. Relevant here, CPLR § 312-a states, in relevant part:

> a summons and complaint, or summons and notice, or notice of petition and petition may be served by the plaintiff or any other person by mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint, or summons and notice or notice of petition and petition, together with two copies of a statement of service by mail and acknowledgement of receipt in the form set forth in subdivision (d) of this section, with a return envelope, postage prepaid, addressed to the sender.

N.Y. C.P.L.R. 312-a. Thus, under New York's CPLR service by mail "is not effective unless the defendant signs and returns an acknowledgment of receipt." *Fairman,* 373 F. Supp. 2d at 232 (citation and quotation marks omitted); *see also Shenko Elec., Inc. v. Hartnett,* 161 A.D.2d 1212, 1213, 558 N.Y.S.2d 859 (1990) ("Service [by mail] is complete only when the acknowledgment of receipt in the form prescribed by CPLR 312–a(d) is mailed or returned to the sender."); *Uzamere v. Uzamere,* 28 Misc.3d 1207A, 957 N.Y.S.2d 639 (Sup. Ct. 2010), *aff'd,* 89 A.D.3d 1013, 933 N.Y.S.2d 336, (2011) ("Serving defendants by certified mail only does not comply with the requirements of CPLR § 308[.]").

Plaintiff presents no evidence of CPLR compliance, i.e., "that copies of the summons and complaint were sent to the defendants, by first-class mail, together with, inter alia, two copies of a statement of service by mail and acknowledgment of receipt, and that the signed acknowledgment of receipts were mailed or delivered to the plaintiff." *Klein v. Educ. Loan Servicing, LLC,* 71 A.D.3d 957, 958, 897 N.Y.S.2d 220 (2010). Notably, "when a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano,* 604 F.3d 732, 752 (2d Cir. 2010) (citation and quotation marks omitted). Plaintiff has failed to do so here.

It is axiomatic that improper service obviates a court of their jurisdiction. "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir.) ("[T]he plaintiff's service of process upon the defendant must have been procedurally proper" to confer jurisdiction.).

Plaintiff may assert that such caviling over service is an academic endeavor due to Defendants' having received notice of this litigation and their active statues in the case. Not so. "Actual notice alone will not sustain the service or subject a person to the court's jurisdiction when there has not been compliance with prescribed conditions of service." *Buggs v. Ehrnschwender*, 968 F.2d 1544, 1548 (2d Cir. 1992) (citation and quotation marks omitted); *Morrison v. New York State Div. for Youth Child. & Fam. Ser.*, No. 98-CV-643, 2000 WL 532762, at *3 (N.D.N.Y. Apr. 25, 2000) ("Notice of suit received by means other than those authorized by statute or rule cannot serve to bring a defendant within the jurisdiction of the court."). Accordingly, Plaintiff's failure to effectuate adequate service of process prevents this Court from exercising personal jurisdiction over the NYU Defendants. Nevertheless, out of an abundance of caution this Court will address NYU Defendants' remaining defenses.

### b. *42 U.S.C. § 1983*

 **\*11** As stated *supra*, a § 1983 claim must demonstrate: (1) the deprivation of a Constitutional rights (2) "*by a person acting under the color of state law.*" 42 U.S.C. § 1983 (emphasis added). Plaintiff makes a sparse assertion the NYU Defendants are liable under § 1983. Putting aside the fact that Plaintiff fails to assert a constitutional injury,[4] § 1983 is inapplicable because NYU Defendants are neither state actors, nor are they acting under the color of state law.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law made possible only because the wrongdoer is clothed with the authority of state law." *Emanuele v. Town of Greenville*, 143 F. Supp. 2d 325, 331 (S.D.N.Y. 2001). The NYU Defendants are private natural persons and privately owned entities – not state actors. Importantly, "private actors and institutions, such as the hospitals ... named as defendants in [Plaintiff's] original complaint, are generally not proper § 1983 defendants because they do not act under color of state law." *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010).

There are rare instances where private actors can be liable under § 1983, however, there must be "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). No such nexus exists here.

Further, to the extent Plaintiff alleges NYU Defendants are licensed or funded by the state, the argument fails. "[T]he presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action." *White*, 369 F. App'x at 226; accord *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). Mere funding or licensure is a far cry from those rare instances where private medical providers acted under the color of state law. For example, in *West v. Atkins*, the Supreme Court held that a physician who was under contract with a state-owned prison hospital to provide medical services to inmates acted under the color of state law. 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Such is not the case here.

### c. *Tort Claims*

As stated *supra*, Plaintiff's intentional tort claims are time barred. *See* CPLR 215(3); *McKenzie*, 355 F. App'x at 536; *Rentas*, 816 F.3d at 226. The claims are also facially deficient.

To reiterate, IIED liability attaches only where conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society]." *Bender*, 78 F.3d at 790–91 (alteration in original). Similarly, NIED requires the plaintiff to allege "extreme and outrageous conduct." *Shearon*, 936 F. Supp. 2d at 156, "of such intensity and duration that no reasonable person should be expected to endure it." *Brewton v. City of New York*, 550 F. Supp. 2d 355, 369 (E.D.N.Y. 2008).

In reviewing Plaintiff's complaint, this Court cannot find an allegation resembling extreme and outrageous conduct on behalf of NYU Defendants. Hospital staff treated Plaintiff and determined she was neither poisoned, nor demonstrated signs of domestic violence, thereafter, discharging her. Plaintiff makes an illusory allegation that several employees acted menacingly toward her upon discharge. In sum, NYU Defendants charted a course of treatment that did not align with Plaintiff's belief. While this Court in no way undermines domestic abuse, the NYU Defendants' conduct falls short of the high standard articulated in *Bender* and *Shearon.*

**\*12** Accordingly, NYU Defendants motion to dismiss should be granted.

### V. Leave to Replead

As a final point, Plaintiff should not be granted leave to replead. Generally, leave to replead should be given to *pro se* litigants if "the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). Such is not the case here, where, accepting all allegations as true, Plaintiff's legal theory is without merit. "The problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### CONCLUSION

This Court respectfully recommends the District GRANT both motions to dismiss. Plaintiff should not be given leave to replead.

### OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Cap. Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

**SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 318291

---

**Footnotes**

1    The Court takes the factual allegations from the Complaint and assumes that they are true for purposes of this Motion. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019).

2    The complaint does not include page numbers, so any page numbers referenced are ECF provided numbers in the top ribbon. Paragraph numbers begin on page 11 and restart at page 28 under the heading "RELIEF SOUGHT". Any paragraph numbers referenced are to the body of the complaint, paragraphs 1-187, prior to the "RELEIF SOUGHT" heading.

3    To the extent Plaintiff seeks liability against any individual Defendants, such is not available under the ADA or Rehabilitation Act. *Yerdon v. Poitras*, 120 F.4th 1150, 1155 (2d Cir 2024); *Iwelu v. NY State Off. of Mental Health*, 2024 WL 2175938, 2024 U.S. App. LEXIS 11742 (2d Cir May 15, 2024); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir 2010).

4    This alone is grounds for dismissal. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Higgins v. City of Johnstown, N.Y.*, 20 F. Supp. 2d 422, 427 (N.D.N.Y. 1998).

---

**End of Document**                                  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 3463425
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

In re Thomas SHELTON.

No. 06-CV-6132 CBA.
|
Nov. 30, 2006.

**Attorneys and Law Firms**

Thomas Shelton, Cape Vincent, NY, pro se.

ORDER

AMON, United States District Judge:

**\*1** On November 8, 2006, Thomas Shelton, who is is incarcerated at Cape Vincent Correctional Facility, filed a document with the Court styled as a "Freedom of Information Request." This Court may not act on Mr. Shelton's request for information as stated. However, in an abundance of caution, the Clerk of Court has been directed to assign a docket number to this case, solely for the purpose of this Order. In order to proceed with this action in federal court, Mr. Shelton must file a complaint and either pay the filing fee or submit a request to proceed *in forma pauperis* and a Prisoner Authorization form within thirty (30) days of the date of this Order.

*Mr. Shelton's Submission*
The document received by the Court consists of a three-page handwritten request "made pursuant to Title 5 U.S.C.A. Subsection 522 and the Sarbanes Oxley Act of 2002" and addressed to the U.S. District Court Eastern District of NY. Mr. Shelton requests " 'All' civil and/or criminal active and/or inactive existing records and/or files social security account/I.R.S. account number # XXX-XX-XXXX and original case number # 02922-2003 STAT of New York County Queens v. Thomas Shelton" and other materials. Mr. Shelton additionally asks that "If you/your office do not have these document mentioned above, please foward this FOIL to the correct department so I my recive these documents." [*sic* ].

DISCUSSION

*Standard of Review*
In reviewing Mr. Shelton's request, the Court is mindful that because he is proceeding *pro se,* his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Furthermore, his pleadings must be read liberally and interpreted as raising the strongest arguments they suggest. *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999).

However, "[i]t is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction. Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.* If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700-01 (2d Cir.2000) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994)). Federal subject matter jurisdiction is available only when a "federal question" is presented, or when plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000. To invoke federal question jurisdiction, the plaintiff's claim(s) must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

*The FOIL/FOIA Request*

**\*2** Mr. Shelton cites to both state and federal laws providing access to government records. The New York Freedom of Information Law, Public Officers Law § 84 *et seq.* ("FOIL") allows individuals to request disclosure of records collected by New York state agencies, subject to certain statutory exemptions. If the initial request is denied, the requester may appeal the denial first to the "head, chief executive or governing body" of the entity or agency in possession of the documents, and, thereafter, by commencing a special proceeding in New York State courts under Article 78 of the New York Civil Practice Law and Rules. N.Y. Pub. Off. L. § 89(4)(a) and (b). Federal courts do not have jurisdiction to enforce state laws granting public access to official records.

The federal Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA") created a judicially enforceable public right of access to information collected by executive branch agencies, subject to specified limitations. FOIA requests must be made to the specific agency, may be administratively appealed to the head of the agency, and ultimately are appealable to federal courts. 5 U.S.C. § 552(a)(4)(B). However, federal court jurisdiction "is dependent upon a showing that an agency has (1) 'improperly;' (2) 'withheld;' (3) 'agency records,' " *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), and the requester must first exhaust his administrative remedies, *Ruotolo v. Department of Justice,* 53 F.3d 4, 8 (2d Cir.1995).

To the extent that Mr. Shelton seeks information from state agencies, such as the Queens County Court, this Court does not have jurisdiction over requests made pursuant to the state FOIL. The federal FOIA applies only to federal agencies, and not to state agencies. *See e.g. Grand Cent. Partnership, Inc. v. Cuomo,* 166 F.3d 473, 484 (2d Cir.1999). To the extent that Mr. Shelton seeks information from federal agencies such as the IRS, he has not indicated that he has filed a FOIA request, that such request was initially denied, nor that he has exhausted his administrative remedies.

Although this Court can discern no federal question that would give this Court jurisdiction over Mr. Shelton's request, the Court is mindful of Mr. Shelton's *pro se* status. Accordingly, the Court grants leave to file a complaint. Rule 8 of the Federal Rules of Civil Procedure provides that, in order to state a claim for relief, a complaint must contain "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends ..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). Moreover, in order to bring a complaint in federal court, Mr. Shelton must either pay the filing fee or seek leave of the Court to proceed *in forma pauperis.* Under 28 U.S.C. § 1914, the filing fee to commence a civil action is $350. Under 28 U.S.C. § 1915, the Court may waive the filing fee upon finding a plaintiff indigent. However, the Prison Litigation Reform Act ("PLRA") requires prisoners to pay the full filing fee from their prison accounts as funds become available. For Mr. Shelton's convenience, the Court has attached the forms for application to proceed *in forma pauperis* and the Prisoner Authorization for disbursement of funds pursuant to the PLRA.

CONCLUSION

**\*3** Mr. Shelton shall have thirty (30) days from the date of this Order to file a complaint that complies with Rule 8. The Complaint must be accompanied by the filing fee or by the application to proceed without prepayment of fees and the Prisoner Authorization to disburse funds from the prison trust fund account. No summons shall issue at this time and all further proceedings shall be stayed for thirty (30) days. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 444-45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 3463425

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3963319
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Holly JARVIS, Plaintiff,

v.

Jason DUELL, et al., Defendants.

5:25-CV-843 (LEK/MJK)
|
Signed October 16, 2025

**Attorneys and Law Firms**

Holly Jarvis, Plaintiff pro se

**REPORT-RECOMMENDATION**

Mitchell J. Katz, United States Magistrate Judge

 **\*1**  To the Honorable Lawrence E. Kahn, Senior U.S. District Judge:

On June 27, 2025, Jarvis began this action by filing a Complaint and moving for leave to proceed *in forma pauperis* ("*IFP*") (Dkts. 1, 2). The Clerk then sent Jarvis' Complaint and *IFP* application to this Court for review. (Dkts. 1, 2). This Court granted Jarvis' *IFP* application, reviewed Jarvis' Complaint, and recommended the District Court dismiss all claims *without prejudice and with leave to amend*. (Dkt. 8). Over Jarvis' objections, the District Court adopted the Report-Recommendation in its entirety. (Dkt. 12). Jarvis has now filed an Amended Complaint. (Dkt. 10). This Court reviews the Amended Complaint under 28 U.S.C. § 1915, and for the reasons below, the Court again recommends dismissing all Jarvis' claims *without prejudice and with leave to amend*.

**I. BACKGROUND**

On November 25, 2023, Jarvis and her son attended Funny Bone Comedy Club, in Syracuse, New York. (Amended Complaint, Dkt. 10, pg. 3, at ¶7). [1]  Some event occurred at Funny Bone which required mall security involvement. (*Id.* at ¶8). There, off-duty probation officers Jason Duell and Phil Philbrick "intervened in [the] event[ ]" (*Id.*) (cleaned up). Duell and Philbrick then followed Jarvis "and her son in a menacing manner, confronted them without cause and escalated the situation." (*Id.* at ¶9). At some point during this altercation, someone placed Jarvis inside the back seat of a police vehicle. (*Id.*, pgs. 4-5, at ¶18). Jarvis alleges that she "was physically injured as a result of this encounter" and then she "was transported to the hospital, and had x-rays taken." (*Id.*, pg. 3, at ¶10). Although she "suffered pain for several months," Jarvis did not plead the x-ray results and "did not continue medical treatment." (*Id.*) (cleaned up).

Jarvis also alleges that Defendants "failed to preserve and/or ensure preservation of video footage of the incident despite knowing its relevance to anticipated litigation." (*Id.*, pg. 4, at ¶12). One month after the incident, Jarvis submitted a FOIL request, and "Defendants and associated agencies refused to provide the footage." (*Id.* at ¶13). Jarvis has never received the video. *See* (*Id.*, pg. 5, at ¶19).

Jarvis now sues Defendants Duell and Philbrick, under 42 U.S.C. § 1983, alleging violations of her First and Fourth Amendment rights. (*Id.*, pgs. 5-6). Jarvis also alleges a "denial of access to Courts and Spoliation" claim. [2]

## II. STANDARD OF REVIEW

On their own, courts can dismiss a case—at any time—if they determine that an action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (cleaned up); 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

**\*2** Courts must show liberality toward *pro se* litigants and use extreme caution when *sua sponte* dismissing *pro se* complaints. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). Still, courts have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## III. DISCUSSION

### A. The District Court should dismiss Jarvis' Amended Complaint because Jarvis has not established that the Northern District of New York has subject matter jurisdiction over her claim.

The Court recommends dismissing Jarvis' Amended Complaint. For a Court to have subject matter jurisdiction over a § 1983 claim, plaintiffs must plausibly allege that the defendants were acting under the color of law. Here, Jarvis has not plausibly alleged that the off-duty defendants were acting under the color of law. So the District Court may not have subject matter jurisdiction. As a result, this Court should dismiss Jarvis' Complaint without prejudice and with leave to amend.

For purposes of 42 U.S.C. § 1983, acting under color of law means that the law-enforcement-officer defendant must "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (cleaned up). Thus, "it is axiomatic that private citizens and entities are not generally subject to § 1983 liability." *Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 512 (E.D.N.Y. 2021) (cleaned up). But § 1983 liability can attach if an off-duty law enforcement officer acts under the color of law. *See, e.g., Claudio v. Sawyer*, 675 F. Supp. 2d 403, 409 (S.D.N.Y. 2009) ("An off-duty police officer effectuating a traffic stop is also considered to be acting under the color of law."). When determining if § 1983 liability attaches, "courts look to the nature of the officer's act" not their position. *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (cleaned up). When examining an officer's actions, courts consider seven non-exhaustive factors. *See Mosca v. City of New York*, No. 17-CV-4327, 2018 WL 3151704, at \*4 (E.D.N.Y. Apr. 24, 2018) (cleaned up). Courts analyze whether the off-duty officer: "(1) identified" themselves "as an officer of the law; (2) was in uniform; (3) was authorized to make an arrest at the time; (4) was carrying handcuffs; (5) was carrying any weapons; (6) flashed a police badge; and (7) placed the plaintiff under arrest or otherwise detained her." *Id.* (cleaned up).

Applying these factors, it is unclear whether this Court has jurisdiction to hear Jarvis' case. For starters, Jarvis does not allege that Defendants identified themselves as law enforcement officers, were in uniform carrying handcuffs and firearms, were authorized to arrest Jarvis and her son, and arrested Jarvis and her son. *See generally*, (Amended Complaint, Dkt. 10). Without pleading these facts, this Court cannot determine whether § 1983 liability attaches. And if this there is no § 1983 liability, then the District Court cannot hear this case. *See Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 348 (N.D.N.Y. 2014) (Baxter, M.J.) ("The requirement that the defendant act under 'color of state law' is jurisdictional"). In consequence, the Court recommends dismissing Jarvis' Complaint—in its entirety—without prejudice and with leave to amend.

**\*3** But even if the District Court were to find that it has jurisdiction because Defendants were acting under the color of law, Jarvis' "denial of access to courts and spoliation" claim must be dismissed. To plausibly allege a § 1983 violation, Jarvis must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (cleaned up). Jarvis' Complaint fails to do so. Jarvis does not come within earshot of alleging that

Defendants worked for Funny Bone Comedy Club, had access to the camera, or destroyed (or failed to preserve or were under any obligation to preserve) the video evidence she seeks. *See generally* (Amended Complaint, Dkt. 10). Even construing the Amended Complaint as liberally as possible, this Court cannot see how the Defendants are personally involved in the video evidence debacle. In sum, the Court recommends dismissing Jarvis' FOIL claim without prejudice and without leave to amend.

As an alternative ground to deny this claim, this Court reminds the District Court that it does not have jurisdiction over this issue. Jarvis' claim emanates from her alleged inability to obtain information under FOIL. FOIL allows individuals to request disclosure of records collected by New York state agencies, subject to certain statutory exemptions. If an initial request is denied, the requester may appeal the denial first to the "head, chief executive or governing body" of the entity or agency in possession of the documents. N.Y. Pub. Off. L. § 89(4)(a) If the requester is again denied, they may appeal that denial by commencing a special proceeding in New York State courts under Article 78 of the New York Civil Practice Law and Rules. N.Y. Pub. Off. L. § 89(4)(b). Federal courts do not have subject matter jurisdiction to enforce state laws regarding public access to official records. *See In re Shelton*, No. 06-CV-6132, 2006 WL 3463425, at *2 (E.D.N.Y. Nov. 30, 2006) ("To the extent that [the plaintiff] seeks information from state agencies ..., this Court does not have jurisdiction over requests made pursuant to the state FOIL."). The Court therefore recommends dismissing any claims arising out of Jarvis' FOIL request.

\* \* \*

To recap, Jarvis has not established that this Court has subject matter jurisdiction over this case. Likewise, Jarvis has not established that the District Court has subject matter jurisdiction over her FOIL claim. And to make matters worse, Jarvis has not pleaded that Defendants are personally involved in the FOIL claim. All in all, the District Court should dismiss Jarvis' Complaint *without prejudice and with leave to amend*. If it decides not to do so, it should still dismiss Jarvis' FOIL claim *without prejudice and without leave to amend* because the Court does not have subject matter jurisdiction over that claim.

### B. The District Court should dismiss Jarvis' Excessive Force claim because nothing in her Amended Complaint establishes that Defendants used force.

The Court recommends dismissing Jarvis' Excessive Force claim *without prejudice and with leave to amend*.[3] To plausibly allege a Fourth Amendment Excessive Force claim, plaintiffs must show that the defendant officer's use of force was objectively unreasonable under the circumstances. Here, Jarvis only conclusory states that she was injured because of the altercation. Without more, the Amended Complaint does not plausibly allege an Excessive Force claim. In consequence, the District Court should dismiss Jarvis' Excessive Force claim.

"The Fourth Amendment prohibits the use of Excessive Force in making an arrest." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015). To plausibly allege a Fourth Amendment Excessive Force claim, plaintiffs must allege that the "police officer's use of force" was "objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 796 (S.D.N.Y. 2021) (cleaned up). Courts examine several factors when analyzing Excessive Force claims. *Id.* These factors include: (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used, the extent of injury inflicted, and" (3) "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016). Courts also examine "(4) the nature and severity of the crime leading to the arrest, (5) whether the suspect posed an immediate threat to the safety of the officer or others, and (6) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Linton v. Zorn*, 135 F.4th 19, 31 (2d Cir. 2025) (cleaned up). Importantly, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (cleaned up).

**\*4** Jarvis' Amended Complaint does not plausibly allege a Fourth Amendment Excessive Force violation. Jarvis' Amended Complaint alleges that "Defendants followed Plaintiff and her son in menacing manner, confronted them ... and escalated the

situation. Plaintiff was physically injured as a result of this encounter." (Amended Complaint, Dkt. 10, pg. 3, at ¶9,10). As a technical matter, paragraph 10's first sentence has no subject. (*Id.* at ¶10). So the Amended Complaint does not allege that *Defendants* caused the injury. This alone is fatal to Jarvis' claim. *See Grullon*, 720 F.3d at 138 (cleaned up). But assuming the Amended Complaint alleges Defendants used force, nothing in the Amended Complaint indicates what level of force Defendants used. Jarvis' statement that she "was physically injured as a result of this encounter" is enough to survive § 1915s forgiving review. But without more, Jarvis' Amended Complaint is too threadbare to conclude that Excessive Force was used. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, § 1915 review would be meaningless for Excessive Force claims if plaintiffs need only plead that the plaintiff and defendant officer were involved in an altercation, and the plaintiff suffered an injury. So this Court recommends dismissing Jarvis' Excessive Force *without prejudice* and with *leave to amend*.

### C. The District Court should dismiss Jarvis' Illegal Search force claim because it is inadequately pleaded.

The District Court should dismiss Jarvis' illegal search claim. The Fourth Amendment prohibits illegal searches. U.S. Const. Amend. IV. A Fourth Amendment search "occurs when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon one's person, house, papers, or effects for the purpose of acquiring information." *Jennings v. Decker*, 359 F. Supp. 3d 196, 207–08 (N.D.N.Y. 2019). "In narrow circumstances, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction as long as the suit would not necessarily imply that the plaintiff's conviction was unlawful." *Dayter v. Caputo*, No. 6:19-CV-0477 (TJM/TWD), 2019 WL 3037504, at *7 (N.D.N.Y. June 4, 2019) (cleaned up). Here, Jarvis never alleges that she was searched. In other words, Jarvis has not plausibly pleaded an illegal search claim. To end, this Court recommends denying Jarvis' illegal search claim *without prejudice and with leave to amend*.

### D. The District Court should dismiss Jarvis' First Amendment Retaliation claim because it is inadequately pleaded.

The Court recommends dismissing Jarvis' First Amendment retaliation claim. "The government may not retaliate against an individual for engaging in protected speech under the First Amendment." *Thomas v. Town of Lloyd*, 711 F. Supp. 3d 122, 136 (N.D.N.Y. 2024) (Hurd J.). To plausibly allege a First Amendment retaliation claim, plaintiffs must allege that they: (1) have "an interested protected by the First Amendment; (2) the defendants actions were motivated or substantially caused by" the plaintiff's "exercise of that right; and (3) the defendants actions effectively chilled the exercise of the plaintiff's First Amendment rights." *Galarza v. Monti*, 327 F. Supp. 3d 594, 603 (S.D.N.Y. 2018). Here, Jarvis has neither alleged that she engaged in protected First Amendment activity nor that Defendants actions chilled her speech. *See Soundview Assocs. v. Town of Riverhead,* 725 F. Supp. 2d 320, 341 (E.D.N.Y. 2010) ("Actual chilling must be established by a change in behavior because a subjective chill cannot serve as a substitute for a specific objective harm.") (cleaned up). Beyond that, Jarvis has not established that Defendants are government actors. *Marte v. Montefiore Med. Ctr.,* No. 22-CV-03491-CM, 2022 WL 7059182, at *5 (S.D.N.Y. Oct. 12, 2022) ("The First Amendment only applies to government actors."). As a result, the District Court should dismiss Jarvis' First Amendment retaliation claim *without prejudice and with leave to amend*.

### E. The District Court should allow Jarvis to amend her Amended Complaint.

**\*5** Generally, before courts dismiss a *pro se* complaint or any part of the complaint on its own, they should afford the plaintiff the opportunity to amend at least once; but leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with a plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, there is no futility because Jarvis can amend her Amended Complaint to include facts that make out each claim—except her FOIL claim because no fact or set of facts will give the District Court subject matter jurisdiction over the FOIL claim. Thus, the Court recommends finding futility with regard to the FOIL claim.

## IV. CONCLUSION
**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that Jarvis' Amended Complaint should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** because she has not established that the District Court has subject matter jurisdiction; and it is further

**RECOMMENDED,** that Jarvis' FOIL claim should be **DISMISSED WITHOUT PREJUDICE** and **WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Jarvis' Fourth Amendment Illegal Search claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Jarvis' Fourth Amendment Excessive Force claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Jarvis' First Amendment Retaliation claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b) (1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2025 WL 3963319

---

**Footnotes**

1   The citation pagination refers to the CM/ECF pagination.

2   Because this is not a cognizable claim the Court construes this as a Freedom Of Information Law (FOIL) claim.

3   The District Court can only reach this issue if it determines that Defendants were acting under the color of law because the Fourth Amendment only prohibits government action, not private action. *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S. Ct. 574, 576, 65 L. Ed. 1048 (1921) (Specifying that the Fourth Amendment protects against government action).

---

**End of Document**                                        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.                5

Case 1:26-cv-00387-BKS-MJK    Document 4    Filed 03/19/26    Page 47 of 53

2018 WL 10323032
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dr. Neelam UPPAL, Plaintiff,

v.

BANK OF AMERICA; Ana Diaz; Miguel M Cordano; John D.
Bernstein; Noa Law Firm; Libler, Gonzalez and Portuondo, Defendants.

18-CV-3085 (CM)
|
Signed 10/04/2018

**Attorneys and Law Firms**

Neelam Uppal, Largo, FL, pro se.

ORDER OF DISMISSAL AND TO SHOW CAUSE UNDER 28 U.S.C. § 1651

COLLEEN McMAHON, Chief United States District Judge:

**\*1** Plaintiff filed this action *pro se* and *in forma pauperis* (IFP). By order dated May 2, 2018, the Court directed Plaintiff to file an amended complaint that stated a viable claim, and informed Plaintiff that if she failed to comply, the Court would order her to show cause why a filing injunction should not be imposed. Plaintiff filed a notice of appeal and a motion for recusal. The Court denied the motion for recusal and granted Plaintiff an extension of time to amend her complaint.[1] (ECF No. 10.) Plaintiff requested an additional extension of time, which the Court granted. Plaintiff filed an amended complaint on August 16, 2018.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

**BACKGROUND**

Plaintiff, a medical doctor, filed this complaint against Bank of America, Florida attorneys Ana Diaz, Miguel M. Cordano, John D. Bernstein, and Florida law firms the NOA Law Firm and Liebler, Gonzalez & Portuondo. Plaintiff listed a New York address for herself, although some attachments suggested that she resided in Florida. The complaint set forth the following allegations: Plaintiff filed for bankruptcy in this District. Bank of America (BOA) "failed to release garnishment on the Plaintiff's accounts during the automatic stay;" garnished exempt accounts such as Plaintiff's IRA and education fund; improperly took money out of Plaintiff's accounts to pay for judgments that were on appeal; and acted "in cahoots with the corrupt lawyers." Plaintiff

Case 1:26-cv-00387-BKS-MJK    Document 4    Filed 03/19/26    Page 48 of 53

Uppal v. Bank of America, Not Reported in Fed. Supp. (2018)

asserted that BOA violated "privacy laws" and myriad criminal statutes. Plaintiff sought to enjoin BOA from withdrawing or freezing her accounts. There were no facts in the complaint regarding the other defendants.

In the May 2, 2018 order to amend, the Court held that Plaintiff's complaint did not comply with federal pleading rules because: (1) federal criminal statutes do not provide for a private right of action; (2) the Court lacked jurisdiction to consider claims arising out of her bankruptcy matter; (3) the allegation that BOA violated "privacy laws" did not state a claim; (4) the complaint provided no facts explaining why the other defendants were named in the complaint; and (5) Plaintiff failed to establish that the Court had diversity jurisdiction over any state law claims. The Court directed Plaintiff to amend her complaint. Noting Plaintiff's extensive litigation history, the Court informed Plaintiff that if she fail to amend her complaint, or if she filed an amended complaint that did not state a claim, the Court would order her to show cause why she should not be barred from filing any new civil actions in this Court IFP without first obtaining permission from this Court for leave to file.

 **\*2**  In her amended complaint, Plaintiff asserts that she resides in Florida. She reasserts the same claims against BOA arising from the bankruptcy action, and state law claims under the Court's diversity jurisdiction. In addition, Plaintiff alleges that defendants conspired with other individuals who are not parties to this action, including Barry Wilkinson and George Indest, to bribe court clerks and remove documents from bankruptcy court files. According to Plaintiff, attorneys, judges, and judicial employees conspired "to interfere with the proper functioning and decision-making of" the court. (ECF No. 13). Plaintiff also asserts claims under 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964.

## DISCUSSION

Plaintiff's previously asserted claims are dismissed for the reasons set forth in the Court's May 2, 2018 order to amend. In short summary, to the extent Plaintiff asserts claims under federal criminal statutes, she — a private citizen — cannot prosecute a criminal action in federal court. See *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Moreover, the amended complaint makes clear that diversity jurisdiction is lacking in this case. To establish jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that he and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). Plaintiff indicates in the complaint that she and all the individual defendants reside in Florida, precluding complete diversity of citizenship.

The Court construes Plaintiff's conspiracy claim as seeking relief under the civil provision of RICO, which "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). "The civil RICO statute, 18 U.S.C. § 1964(c), specifies that '[a]ny person injured ... by reason of a violation of [§ 1962] may sue therefor ... and ... recover threefold the damages he sustains.' " *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 176 (2d Cir. 2004) (quoting 18 U.S.C. § 1964(c)).

In order to state a claim for relief under § 1964(c), Plaintiff must allege that Defendants violated § 1962. This requires Plaintiff to plead that he was injured by "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Racketeering activity is defined in 18 U.S.C. § 1961(1) and includes mail fraud, as defined in 18 U.S.C. § 1341, and wire fraud, as defined in 18 U.S.C. § 1343. A pattern of racketeering activity must involve "at least two predicate acts [of racketeering activity] committed within a ten year period." *Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.*, 113 F.3d 308, 310 (2d Cir. 1997) (citing *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237 (1989)); *see also* 18 U.S.C. § 1961(5).

"A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996). These allegations must meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "To satisfy this requirement, a complaint

Case 1:26-cv-00387-BKS-MJK    Document 4    Filed 03/19/26    Page 49 of 53

Uppal v. Bank of America, Not Reported in Fed. Supp. (2018)

must 'specify the time, place, speaker, and content of the alleged misrepresentations,' [and] 'explain how the misrepresentations were fraudulent." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)). Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," but a complaint still must contain enough factual matter to "give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen*, 711 F.3d at 359 (quoting *Caputo*, 267 F.3d at 191).

**\*3**  Here, Plaintiff provides no facts to state a civil RICO claim against Defendants. Plaintiff vaguely asserts that Defendants engaged in fraud, but she does not plead these allegations with particularity. Plaintiff does not describe how any of the Defendants other than BOA were involved in defrauding her. Instead, Plaintiff offers little more than legal conclusions to support her claims that Defendants engaged in a scheme to defraud her. Therefore, Plaintiff's complaint does not satisfy Rule 9(b)'s heightened pleading requirements, and the Court dismisses the conspiracy claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff invokes Title VII and § 1981, but both statutes are irrelevant to this case. Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). Plaintiff was not in an employer-employee relationship with defendants, and therefore she cannot state a Title VII claim.

Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. § 1981(a)). To state a § 1981 claim, a plaintiff must allege: (1) that he is a member of a racial minority; (2) the defendants intended to discriminate on the basis of race; and (3) the discrimination concerns one of the statute's enumerated activities. *Id.* at 476 (holding that a plaintiff is entitled to relief under § 1981 "when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship"). The amended complaint is bereft of any facts suggesting a viable § 1981 claim.

### LITIGATION HISTORY

A review of Public Access to Court Electronic Records (PACER) shows that Plaintiff has filed more than twenty-five cases in federal and circuit courts in New York, New Jersey, and Florida. *See Uppal v. Indest*, No. 17-7072 (CM), 2017 WL 6405660, at *2 (S.D.N.Y. Oct. 12, 2017) (dismissing Plaintiff's conspiracy claims and claims arising under federal criminal statutes, and warning her against continued frivolous litigation), No. 17-3362 (2d Cir. May 17, 2018) (dismissing appeal as lacking an arguable basis in law or fact). Plaintiff has previously been warned and sanctioned. *In re Taneja*, 2018 WL 1831853, at *1 (S.D.N.Y. 2018) (fining Plaintiff $5,000); *In re Neelam Taneja a/k/a Neelam Uppal*, No. 17-BK-10140 (M.D. Fla. Bankr. Jan. 11, 2018) (deeming Plaintiff "an abusive serial bankruptcy filer" and enjoining her from filing for bankruptcy in that district for two years).

Although *pro se* litigants are afforded special solicitude, Plaintiff is very familiar with federal court proceedings. The Court finds that Plaintiff should have known that this complaint lacked merit when she filed it. *See Sledge v. Kooi*, 564 F.3d 105, 109-10 (2d Cir. 2009) (explaining that in certain circumstances, a litigious plaintiff may not be entitled to special solicitude because of her familiarity with the legal system). Plaintiff is ordered to show cause by declaration why she should not be barred from filing any further actions in this Court IFP without first obtaining permission from this Court to file her complaint. *See Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam) ("The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."). Within thirty days of the date of this order, Plaintiff must submit to this Court a written declaration setting forth good cause why the Court should not impose this injunction upon her. If Plaintiff fails to submit a declaration within the time

Case 1:26-cv-00387-BKS-MJK    Document 4    Filed 03/19/26    Page 50 of 53

Uppal v. Bank of America, Not Reported in Fed. Supp. (2018)

directed, or if Plaintiff's declaration does not set forth good cause why this injunction should not be entered, she will be barred from filing any further actions IFP in this Court unless she first obtains permission from this Court to do so.

**CONCLUSION**

 **\*4** The Clerk is directed to mail a copy of this order to Plaintiff, and note service on the docket. The amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a), is dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff has thirty days to show cause by written declaration why an order should not be entered barring Plaintiff from filing any future action *in forma pauperis* in this Court without prior permission. A Declaration form is attached to this order.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.


Attachment

Uppal v. Bank of America, Not Reported in Fed. Supp. (2018)

Case 1:26-cv-00387-BKS-MJK    Document 4    Filed 03/19/26    Page 51 of 53

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the first and last name of each plaintiff or
petitioner.

-against-

Case No. _____ CV _____

_____

_____

_____

_____

Write the first and last name of each defendant or
respondent.

## DECLARATION

_____

_____

Briefly explain above the purpose of the declaration, for example, "in Opposition to Defendant's
Motion for Summary Judgment," or "in Response to Order to Show Cause."

I, _____ , declare under penalty of perjury that the

following facts are true and correct:

In the space below, describe any facts that are relevant to the motion or that respond to a court
order. You may also refer to and attach any relevant documents.

_____

_____

_____

_____

_____

Rev. 10/3/16

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Attach additional pages and documents if necessary.

_____        _____
Executed on (date)                       Signature

_____        _____
Name                                            Prison Identification # (if incarcerated)

_____        _____
Address                       City                State       Zip Code

_____        _____
Telephone Number (if available)        E-mail Address (if available)

Page 2

**All Citations**

Not Reported in Fed. Supp., 2018 WL 10323032

Case 1:26-cv-00387-BKS-MJK    Document 4    Filed 03/19/26    Page 53 of 53

---

**Footnotes**

1       In its order, the Court held that the notice of appeal was defective because Plaintiff was attempting to appeal from a nonfinal order that had not been certified for interlocutory appeal. *See, e.g., United States v. Rodgers*, 101 F.3d 247, 252 (2d Cir. 1996) (deeming a notice of appeal from a nonfinal order to be "premature" and a "nullity," and holding that the notice of appeal did not divest the district court of jurisdiction).

---

**End of Document**                           © 2026 Thomson Reuters. No claim to original U.S. Government Works.